# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2011

Lyle W. Cayce
Clerk

No. 10-20134

PRUDENTIAL MORTGAGE CAPITAL COMPANY, L.L.C.; P.M.C.F
PROPERTIES, L.L.C.,

Plaintiffs - Appellees

v.

NAMIR FAIDI; 500 SEAWALL I, LTD.; SUNHILL P. B. I., INC.,

Defendants - Appellants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with
No. 10-20423

In re: NAMIR FAIDI,

Debtor

NAMIR FAIDI,

Appellant

v.

PRUDENTIAL MORTGAGE CAPITAL COMPANY, L.L.C.; PMCF
PROPERTIES, L.L.C.,

Appellee

Appeals from the United States District Court
for the Southern District of Texas
08-CV-1310
10-CV-1149

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

Namir Faidi (Faidi) personally guaranteed a loan with Prudential Mortgage Capital Company, LLC (Prudential). Prudential sued Faidi for making what it believed were material misrepresentations that affected its decision to make the loan. Four days prior to trial, Faidi filed for Chapter 7 bankruptcy. Subsequently, the district court found in Prudential's favor, and the bankruptcy court held that Faidi's debt to Prudential was not dischargeable. We AFFIRM both judgments.

I.

Faidi is a real estate developer in the Houston-Galveston, Texas area. He was at all times in control of 500 Seawall I, Ltd. (Seawall) and Sunhill P. B. I., Inc. (Sunhill). In 2004, Seawall began to develop a retail and shopping center. In need of a permanent loan for the project, Seawall contacted Prudential. After performing due diligence on the property and the prospective buyer, Prudential approved and made a loan to Seawall in the amount of $13,860,000. As consideration for the loan, Prudential, Seawall, and Faidi executed a series of loan documents, in which Faidi assumed personal liability for the loan and guaranteed payment to Prudential for all losses and damages incurred, suffered, or sustained by Prudential arising out of, or relating to, among other things, any fraud, material misrepresentation, failure to disclose a material fact, or a failure to disclose in any of the materials provided to Prudential by the borrower.

After Prudential funded the loan, Seawall never made a loan payment. Accordingly, Prudential foreclosed on the retail and shopping center. The foreclosure resulted in a deficiency in the borrower's loan account of more than

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

$3.2 million. Just prior to foreclosure, Prudential learned that Faidi made what Prudential believed to be misrepresentations that were material to its decision to make the loan to Seawall. Prudential also believed that the misrepresentations led to the deficiency following foreclosure. Subsequently, Prudential filed suit against Faidi for breach of contract, common law fraud, and statutory fraud under section 27.01 of the Texas Business and Commerce Code. Trial was set for September 15, 2009.

Four days before trial, Faidi filed a suggestion of bankruptcy (hereinafter the bankruptcy case). Per the Southern District of Texas's general practice, the bankruptcy case was automatically referred to a bankruptcy judge. Also, pursuant to 11 U.S.C. § 362, all claims against Faidi were automatically stayed, including the claims alleged in Prudential's civil suit (hereinafter the civil suit). The district court withdrew the reference to the bankruptcy court, lifted the stay of the civil suit, and conducted a hearing on September 14, 2009.

Following the hearing, the district court re-referred all bankruptcy matters to the bankruptcy court and reset the trial for December 15, 2009. On October 27, 2009, the district court entered an order allowing the parties to file an amended joint pretrial order and amended trial materials. On November 10, 2009, Faidi's counsel for the civil suit filed a motion to withdraw. The district court granted the motion on November 25, 2009 and gave Faidi until December 30, 2009 to obtain new counsel.

Faidi, appearing pro se, filed a motion for a continuance of trial on December 3, 2009, which the district court denied on December 7, 2009. The next day, Prudential filed amended trial materials. Faidi, through new trial counsel, filed a second motion for a continuance on December 9, 2009. The district court, again, denied Faidi's motion.

On December 15, 2009, the civil suit began. Ultimately, the district court entered findings and conclusions, holding that Faidi willfully and maliciously

harmed Prudential by committing fraud and knowingly making material misrepresentations in connection with the loan. The same day, the district court entered its final judgment. Faidi appealed the district court's judgment to this court.

On December 17, 2009, two days after the civil suit commenced, Prudential filed an adversary proceeding in the bankruptcy case, objecting to the dischargeability of the debt owed to Prudential by Faidi (hereinafter the dischargeability action). On February 26, 2010, following the district court's entry of judgment against Faidi, Prudential filed a motion for summary judgment in the bankruptcy case, regarding dischargeability. Faidi opposed Prudential's motion for summary judgment and sought an abatement of the bankruptcy court's determination of the motion, pending appeal of the civil suit. The bankruptcy court denied Faidi's request to abate the adversary proceeding and entered summary judgment in favor of Prudential. Faidi appealed the bankruptcy court's determination. The district court certified Faidi's challenge for direct appeal to this court. We granted the district court's certification and consolidated that case with Faidi's appeal of the district court's judgment in the civil suit.

On appeal, Faidi does not challenge the merits of either judgment. In regard to the civil suit, he argues that (1) the district court did not have jurisdiction over his case, (2) the district court erred in allowing Prudential to amend its complaint, and (3) the district court erred in denying his motions for a continuance. Regarding the bankruptcy court's judgment, Faidi argues that it erred in denying his motion to abate.

II.

A.    Subject Matter Jurisdiction

Faidi argues that the district court did not have jurisdiction to decide the dischargeability action. Faidi claims that the dischargeability action, a core

bankruptcy proceeding, was referred to the bankruptcy court. Therefore, he contends, after the district court re-referred the bankruptcy case to the bankruptcy court, the district court no longer had jurisdiction to try the dischargeability action.

"The court reviews issues of jurisdiction de novo." Espinal v. Holder, 636 F.3d 703, 705 (5th Cir. 2011). Under 28 U.S.C. § 1334(a), bankruptcy jurisdiction is vested in the district court. However, a district court can refer any case or proceeding to a bankruptcy court for further proceedings. 28 U.S.C. § 157(a). Furthermore, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred" to the bankruptcy court "on its own motion or on timely motion of any party, for cause shown." Id. § 157(d).

Here, Faidi's challenge to the district court's jurisdiction mistakenly conflates the civil suit and the bankruptcy case. Specifically, Prudential filed its civil suit, and thereafter, Faidi filed the bankruptcy case. Relevant here, two events occurred because Faidi filed the bankruptcy case. First, the case was automatically referred to the bankruptcy court. See In re Wilborn, 609 F.3d 748, 752 (5th Cir. 2010) ("Consistent with that broad authority, the district court for the Southern District of Texas has issued a general order of reference, which automatically refers all bankruptcy cases and proceedings to the bankruptcy judges of the district."). Second, pursuant to § 362, all claims against Faidi were automatically stayed, including the claims alleged in the civil suit. The district court withdrew the reference to the bankruptcy court and scheduled a hearing. Following the hearing, the district court lifted the automatic stay of the civil suit and re-referred the bankruptcy case. The dischargeability action was filed in the bankruptcy case after it was re-referred. Therefore, the dischargeability action was not in the district court when it withdrew the reference, and it was never part of the civil case that was tried before the district court.

In sum, Faidi's claim that the district court did not have jurisdiction to determine the dischargeability action is unsubstantiated and conflates the civil case and the bankruptcy case, which are two separate matters. Therefore, the district court had subject matter jurisdiction to decide Prudential's claims against Faidi.

B.    Amendment

Faidi argues that, after re-referring the case, the district court improperly allowed Prudential to amend its proposed findings of fact and conclusions of law to add, effectively, dischargeability as a cause of action. We disagree.

"This court reviews a district court's decision to allow a plaintiff to amend her pleadings for an abuse of discretion." See Luera v. M/V Alberta, 635 F.3d 181, 186 (5th Cir. 2011). As a general matter, courts should grant leave to amend pleadings "freely . . . when justice so requires." FED. R. CIV. P. 15(a). Normally, "leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile." Jebaco Inc. v. Harrah's Operating Co. Inc., 587 F.3d 314, 322 (5th Cir. 2009). Faidi has not made any allegations to this effect, and he has not specified what amendments were improperly allowed by the district court. Moreover, after carefully reviewing the record, including Prudential's complaint and the amendments to its pleadings, we can find no amended facts or conclusions alleging a dischargeability cause of action. There is no mention of § 523, dischargeability, or any other bankruptcy-related term or statutory provision. The amendments merely expand and clarify the allegations made in the original proposed findings of fact and conclusions of law. Thus, we conclude that the district court did not abuse its discretion by allowing Prudential to amend its pleadings.

C.    Motions to Continue

Faidi argues that the district court erred in denying his requests for a

6

continuance because he was not given enough time to obtain counsel. He also claims that the district court erred in denying his second motion because, when he obtained counsel, his attorney was not given enough time to prepare for trial. Finally, Faidi argues that the district court implicitly gave him a continuance until December 30, 2009; therefore, the trial should not have commenced on December 15, 2009, even though he retained counsel by December 9.. These arguments are not persuasive.

This court reviews a district court's denial of a motion to continue for an abuse of discretion. Ahmed v. Gonzales, 447 F.3d 433, 437 (5th Cir. 2006). In reviewing the denial of a continuance, this court "examines the totality of the circumstances." United States v. Stalnaker, 571 F.3d 428, 439 (5th Cir. 2009). However, we have made clear that we will not reverse the district court's determination unless a party establishes that he "suffered serious prejudice." United States v. Scott, 48 F.3d 1389, 1393 (5th Cir. 1995). Faidi has not shown that he "suffered serious prejudice" as a result of the district court's denial of either motion.

Specifically, Faidi has not alleged that any prejudicial consequences resulted from the denial of the first motion to continue. Regarding the second motion to continue, he summarily states that "[i]f a short continuance had been granted, . . . [he] would have had counsel [who] could have filed all necessary pretrial materials and been ready for trial." But Faidi has failed to show what other pretrial materials were necessary. The parties were required to submit their pretrial materials by September 4, and so, as the district court explained at the September 14 hearing, the pretrial phase had largely concluded before Faidi filed for bankruptcy and before his original counsel withdrew. Although it is puzzling that the district court gave Faidi until December 30 to obtain counsel, but did not move the trial date from December 15, Faidi cannot prevail on a scheduling technicality: He was on notice since September 14 that he would

7

need to obtain new counsel because of a conflict with the bankruptcy case. It makes no difference that his attorney did not formally withdraw until November 10. Faidi was not prejudiced by anything other than his own dilatory tactics.

Faidi has not established and we can find no evidence demonstrating that the district court abused its discretion when it denied his motions to continue.

\*　　\*　　\*

Thus, we conclude that none of Faidi's challenges warrant the reversal of the district court's judgment.

### III.

As previously noted, the bankruptcy court made two determinations—denied Faidi's motion to abate and granted Prudential's motion for summary judgment, finding Faidi's debt nondischargeable. Faidi does not challenge the merits of the bankruptcy court's summary judgment. He only challenges the denial of his motion to abate.

Although Faidi's motion was stylized as a motion to abate, he effectively requested a motion to stay the bankruptcy proceedings, pending appeal of the district court's judgment in the civil suit. Thus, we will treat the motion as a motion for a stay pending appeal, pursuant to Federal Rule of Bankruptcy Procedure 8005. The decision to grant or deny a motion for stay pending appeal lies in the sound discretion of the court whose order is being appealed. See Arnold v. Garlock, 278 F.3d 426, 438–39 (5th Cir. 1991). Accordingly, this court reviews the denial of a stay for an abuse of discretion. Williams v. Thaler, 602 F.3d 291, 308 (5th Cir. 2010). In exercising that discretion, however, a court is to be guided by the four-factor test ordinarily used to evaluate motions for preliminary injunctions. Id. at 438–39. The factors to consider are: (1) the movant's likelihood of success on the merits, (2) the irreparable harm to the movant if the stay is not granted, (3) the substantial harm to other parties if the stay is granted, and (4) the public interests implicated in granting or denying the

stay. Arnold, 278 F.3d at 438–39. Faidi makes no arguments to establish any of these factors, and after carefully reviewing the record, we can find no evidence that the bankruptcy court erred in denying his motion. Thus, Faidi has not articulated nor have we found any grounds for reversing the bankruptcy court's determination.

## IV.

Accordingly, we AFFIRM the district court's judgment and AFFIRM the bankruptcy court's judgment, denying the motion to abate.